UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PORTER,

    *Plaintiff*,

CASE NO. 11-CV-12317

DISTRICT JUDGE PAUL D. BORMAN
MAGISTRATE JUDGE CHARLES BINDER

v.

CORNELL HOWARD,
*ADW of Housing Mound Correctional Facility*;
DARRELL M. STEWARD,
*Deputy Warden, Mound Correctional Facility;*
CYNTHIA GAUSE,
*Transfer Coordinator, Mound Correctional Facility;*
and L. HUNTER,
*Resident Unit Manager, Mound Correctional Facility;*

    *Defendants*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
(Docs. 18, 22, 25)

**I.   RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the motions be **GRANTED**.

**II.   REPORT**

    **A.   Introduction**

On May 26, 2011, Plaintiff, a state prisoner currently housed at the Chippewa Correctional Facility in Kincheloe, Michigan, filed this *pro se* federal civil rights action under 42 U.S.C. § 1983, alleging that he was unconstitutionally retaliated against for exercising his First Amendment rights. (Compl., Doc. 1.) The events forming the basis for the complaint occurred while Plaintiff was housed at the Mound Correctional Facility in Detroit, Michigan. (Doc. 1 at 3.) On August 19,

2011, U.S. District Judge Paul D. Borman entered an order referring pretrial matters to the undersigned magistrate judge. (Doc. 13.) Defendants Gause and Hunter filed a motion for summary judgment on September 13, 2011 (Doc. 18), and Plaintiff responded on October 11, 2011. (Doc. 20.) Defendant Cornell Howard filed a motion for summary judgment on October 14, 2011 (Doc. 22), and Plaintiff responded on November 4, 2011. (Doc. 27.) Defendant Darrell M. Steward filed a motion for summary judgment on October 24, 2011 (Doc. 25), and Plaintiff responded on November 10, 2011. (Doc. 28.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), these motions are ready for report and recommendation without oral argument.

### B.     Plaintiff's Complaint

Plaintiff's complaint reads, in its entirety:

> On/about 2/15/11 I attempted to resolve an issue with my Bunkie and I not getting along and I spoke to my Housing Unit Manager, Hunter about the situation and once she told me there was nothing she could do and if I pursued the issue, she would have me transferred to a disciplinary prison. I went to Inspector Goodwin about the situation and had my Bunkie moved and RUM Hunter became angry and told me, I was being transferred 'up north' and on 2/17/11 a transfer was submitted and I'd like to include transfer coordinator Cynthia Gause and Alan C. Howard who approved the transfer order to my complaint.
>
> I would like for this Court to award me punitive damages for pain, suffering and hardship as a result of retaliation for me complaining to Inspector Goodwin about the problem my Bunkie and I was having and being transferred to and disciplinary prison 'up north' away from my family.

(Doc. 1 at 3.)

### C.     Arguments of the Parties

Defendants' motions are virtually identical and raise the same three arguments: (1) Plaintiff failed to exhaust administrative remedies because the grievance he attempted to file was rejected at all steps as untimely; (2) Plaintiff cannot meet the elements of a First Amendment retaliation claim; and (3) Defendants are entitled to qualified immunity. (Docs. 18, 22, 25 at 4.)

Plaintiff responds that: (1) he requested that his "bunkie" be moved, but the request was denied; (2) he is 74 years old and it is a hardship for his family and friends to visit him; and (3) he does not know why his grievance was not received until April 7, 2011, because he placed it in the mail on March 3, 2011. (Doc. 20 at 2-3; Doc. 27 at 2; Doc. 28 at 2.)

### D. Summary Judgment and Qualified Immunity Standards

Defendants raise the defense of qualified immunity, which "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; courts are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should

3

be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (citations omitted).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### E. Analysis and Conclusions

#### 1. Whether a Constitutional Violation Occurred

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal

connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011).

As to the first element, the First Amendment protects a prisoner's filing of non-frivolous grievances. *Hill v. Lippin*, 630 F.3d 468, 472 (6th Cir. 2010).[1] "In other words, an inmate's pursuit of grievances against prison officials can constitute protected conduct for purposes of a retaliation claim, but 'only to the extent that the underlying claims ha[ve] merit.'" *Clark v. Johnston*, 413 Fed. App'x 804, 812 (6th Cir. 2011) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). The grievance need not be formal to be protected; the salient question is whether the grievance, in whatever form, is frivolous. *Clark,* 413 Fed. App'x at 812 ("The problem with Clark's case is not that his complaint was informally made, but that it has not been shown to have had any merit.")

In the instant case, the complaint Plaintiff made to Inspector Goodwin was a complaint about "not getting along" with his "Bunkie." (Doc. 1 at 3.) I suggest that this grievance was frivolous since there is no requirement that prison authorities endeavor to match prisoners with compatible cellmates. I note that Plaintiff did not allege that his "Bunkie" was threatening him, assaulting him, or placing him in danger in any way. *Cf. Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."); *Case v. Ahtow*, 301 F.3d 605, 605-06 (7th Cir. 2002) ("if [the defendants] behaved with deliberate indifference to the plaintiff's safety, meaning that they knew of a serious danger to him (really knew – not just should have known, which would be all that would be required in a negligence case) and could

---

[1] Claims of retaliation for the exercise of rights guaranteed by the Petition Clause are governed by the same test that applies to the Free Speech Clause. *Borough of Duryea, Pa. v. Guarnieri*, ___U.S.___, 131 S. Ct. 2488, 2495, 180 L. Ed. 2d 408 (2011).

easily have prevented it from materializing but failed to do so, they are liable"); *Stuckey v. Thompson*, No. CV 405-216, 2001 WL 1035134, at *3, 6 (S.D. Ga. Mar. 29, 2007) (any threat must be a "particularized threat to plaintiff's safety" beyond simply knowledge that a prisoner is a problematic inmate because the constitution is triggered "only when the prisoner communicates that he is in serious danger").

I therefore suggest that Plaintiff's grievance regarding not getting along with his "Bunkie" was frivolous and thus did not rise to the level of protected conduct. *See Clark*, 413 Fed. App'x at 812-813 (complaint to corrections official that his legal property was confiscated without any evidence regarding denial of access to courts failed to show that he was engaged in protected conduct). Because Plaintiff has failed to aver facts sufficient to establish the first element of a retaliation claim, I further suggest that Defendants' motions for summary judgment be granted.

Even assuming, *arguendo*, that Plaintiff could meet the first element, I suggest that he has not alleged facts that could meet the second element – that defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct. *See Thaddeus-X, supra.*

Plaintiff alleges that his transfer from Mound Correctional Facility in Detroit to Chippewa Correctional Facility in Kincheloe, Michigan, constituted adverse action because Kincheloe is "up north" in Michigan's upper peninsula and is "away from [his] family." (Doc. 1.) As noted by Defendants, at the time of transfer, Plaintiff was classified as a Level II security inmate and both Mound Correctional Facility and Chippewa Correctional Facility house Level II prisoners. (Howard Aff., Doc. 22, Ex. A ¶ 6.) In addition, Defendant indicates that the Chippewa Correctional Facility is not a "disciplinary facility." (*Id.*)

The Sixth Circuit has held that "[s]ince prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not

6

deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). However, where the transfer "would result in foreseeable, negative consequences" sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct, the transfer may be considered adverse action. *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010). Examples of negative consequences that would be a sufficient deterrent include: transfer from the general population to a lock-down unit or other restrictive living environment with fewer privileges, *Hill*, 630 F.3d at 475; transfer resulting in loss of a high-paying job that paid for lawyer fees and greater distance from lawyer, thus making access to the courts more difficult, *Siggers-El*, 412 F.3d at 702; and transfer to segregation or to an area of the prison used to house mentally ill inmates, *Thaddeus-X*, 175 F.3d at 398.

In the instant case, Plaintiff has not alleged any sufficient negative consequences such as those listed above and instead has only alleged negatives that are ordinarily associated with a transfer, i.e., moving to a different location that may be more inconvenient for visitors. In addition, the transfer was from a Level II facility to Level II in a facility that houses prisoners who are classified as Level I, II or IV.[2]

I therefore suggest that Plaintiff has not alleged adverse action as required under the second element of a retaliation claim. Plaintiff's claim that the Chippewa Correctional Facility is "disciplinary" is unsupported and contradicted by the evidence. Even if Plaintiff were alleging that the Chippewa Facility is more "strict," this would also be insufficient. *See Traini v. Michigan Dep't of Corr.*, No. 1-11-cv-832, 2011 WL 4559978, at *5 (W.D. Mich. Sept. 30, 2011) (transfer from Level II facility to Level II confinement at multi-security facility housing levels I, II, and IV was not adverse action despite plaintiff's claim that facility transferred to was more strict). I

---

[2] See the Michigan Department of Corrections website at http://www.michigan.gov/corrections.

therefore suggest that Plaintiff has not alleged facts sufficient to meet the second element of a retaliation claim and that summary judgment for Defendants is warranted granted on this ground as well.[3]

### 2. Clearly Established Right

Even assuming, *arguendo*, that Plaintiff could show a constitutional violation, I suggest that any such violation would not have involved a clearly established constitutional right of which a reasonable person would have known. *See Radvansky,* 395 F.3d at 302. I therefore suggest that Defendants are entitled to qualified immunity and that their motions for summary judgment be granted.

### F. Alternative Analysis

Alternatively, Defendants' motions could be granted based on Plaintiff's failure to exhaust administrative remedies. Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). To exhaust a claim, a prisoner must proceed through all of the steps of a jail or prison's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme

---

[3]Since I suggest that Plaintiff has not averred facts sufficient to show either the first or second elements of a retaliation claim, there is no need to address the third element.

8

Court held in *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386.

The Supreme Court provided further clarification of the PLRA's exhaustion rule in *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). The *Jones* Court struck down the Sixth Circuit's procedural rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense that must be raised by the defendant. *Id.* at 921. The Court further held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 127 S. Ct. at 922-23.

The Michigan Department of Corrections provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, within two business days after becoming aware of a grievable issue, an inmate should attempt to verbally resolve the dispute with those involved. MDOC PD 03.02.130(P). If such an attempt is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). The grievance policy provides the following instructions regarding what information needs to be included in a grievance:

9

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R).[4]

If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he then must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process.

In the instant case, Plaintiff filed a grievance (#URF-11-04-1201-28e) complaining about the transfer and, although it was dated March 3, 2011, it was not received until April 7, 2011. (Doc. 18 at Ex. B.)[5] Plaintiff had been transferred on March 1, 2011. Plaintiff was informed that the grievance was rejected because "you exceeded your time limits in filing a grievance on issue(s) that concern you, and at the same time provided no reasonable circumstance beyond your control that would have prevented you from filing this grievance in a timely fashion." (Doc. 18 at Ex. B.) This same reason supported the denials at Step II and Step III. (*Id.*) Although Plaintiff has alleged in his responses to the instant motions that he placed the grievance in the mail on March 3, 2011,

---

[4]The MDOC grievance policy referred to by the Supreme Court in *Jones v. Bock* was the November 1, 2000, version, *see Jones*, 127 S. Ct. at 916, which did not require inmates to include in their grievances the dates, times, places and names of all those involved. The policy directive at issue here – the July 2007 version – clearly requires this higher level of specificity.

[5]It was not until Plaintiff's Step II appeal that Plaintiff argued that he was being transferred because he "went over [Hunter's] head to the inspector about a bunky." (Doc. 18 at 14-15; Ex. B.) Thus, the issue may not have been properly exhausted for this reason as well.

10

he did not make any such claim in any of his appeals during the grievance process and, thus, failed to provide any circumstance beyond his control as required by the prison's policy. (*Id.*) Since Plaintiff failed to abide by the prison's requirements on exhaustion – both timeliness and failure to provide a circumstance explaining the lack of timeliness – I suggest that he has failed to properly exhaust his remedies.[6]

### G. Conclusion

For all the reasons stated above, I recommend that Defendants' motions be granted.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the

---

[6]Plaintiff also filed grievance #URF-1103-0883-03B on March 12, 2011, but that grievance complained about a 73-year-old prisoner being placed in a "disciplinary facility" and stated that he "should not be here." (Doc. 18 at Ex. C.) This grievance appears to contest the continuing incarceration, not the initial transfer, and it does not mention facts that imply retaliation.

objections a party may have to this report and recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                    s/ *Charles E Binder*
                                                    CHARLES E. BINDER
Dated: January 6, 2012                          United States Magistrate Judge

### **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Joshua Marcum, and served by first class mail on John Porter, #154033, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI, 49784.

Date:  January 6, 2012                    By    *s/Jean L. Broucek*
                                                              Case Manager to Magistrate Judge Binder